```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

| | | |
|---|---|---|
| LOREN C. GILL, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 4:11-CV-168 (CDL) |
| JAY NICOL, | * | |
| Defendant. | * | |

O R D E R

In this action, Plaintiff Loren C. Gill ("Gill") seeks to recover a debt he contends is owed to him by Defendant Jay Nicol ("Nicol"). Gill filed a Motion for Summary Judgment (ECF No. 25), asserting that Nicol cannot refute that Gill is entitled to payment. In support of his claim, Gill produced the Assignment and Assumption Agreement under which Nicol obtained an ownership interest in the company Advance Alaska, LLC ("Advance Alaska") and also undertook the obligations of a Promissory Note and Security Agreement. Nicol does not dispute that he signed the Assignment and Assumption Agreement. Nicol contends, however, that the Assignment and Assumption Agreement is unenforceable due to failure of consideration and illegality. For the reasons set forth below, the Court finds that Nicol's arguments are without merit. Given that Gill established a prima facie right to repayment of the debt and that Nicol has asserted no valid

defenses, Gill's summary judgment motion is granted as to his claim on the Promissory Note, including his claim for attorney's fees. Gill's summary judgment motion as to his petition for a writ of possession, however, is denied because the Court cannot discern from the present record precisely what collateral is secured by the Security Agreement. In addition, because the Court finds that Nicol's arguments regarding failure of consideration and illegality are meritless, Nicol's motion to amend his Answer to add those defenses (ECF No. 27) is denied as futile.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of Gill's summary judgment motion. Gill organized Advance Alaska, LLC, a payday lending business, in 2004. Gill was the sole owner of Advance Alaska until 2009. In 2009, Alaska's Division of Banking and Securities declined Gill's application to renew the deferred deposit advance licenses that were required for Advance Alaska to operate, and an administrative law judge affirmed the Division's decision not to renew the licenses. *See generally* Def.'s Resp. to Pl.'s Mot. for Summ. J. Ex. B, Decision on Summ. Adjudication, ECF No. 28-4 at 7-16. The administrative law judge made it clear that Advance Alaska would not be permitted to obtain the requisite licenses as long as Gill maintained ownership and control over the company. *Id.* at 7, ECF No. 28-4 at 13. The administrative law judge noted, however, that Gill was "free to sell Advance Alaska, LLC to someone who is qualified to obtain a license and run the business." *Id.* at 7-8, ECF No. 28-4 at 13-14.

On March 3, 2009, Gill entered a Purchase and Sale Agreement ("Purchase Agreement") with Premium Service, LLC ("Premium Service"). Pl.'s Statement of Undisputed Material Facts Ex. 2, Purchase & Sale Agreement, ECF No. 25-2 at 7. Under the Purchase Agreement, Premium Service agreed to purchase 100% of the capital stock of Advance Alaska. *Id.* Premium

3

Service agreed to execute a promissory note and security agreement in favor of Gill "against all Advance Alaska, LLC assets." *Id.* The purchase price was $841,870.31 with an interest rate of 9% per annum. *Id.* Also on March 3, 2009, Gill entered a Promissory Note and Security Agreement ("Promissory Note") with Premium Service's organizer, Raymond Thorn ("Thorn"). Pl.'s Statement of Undisputed Material Facts Ex. 3, Promissory Note, ECF No. 25-2 at 8-10. The Promissory Note states that the borrower promised to pay Gill $841,870.31 plus interest at a rate of 9% per annum "in return for valuable consideration received." *Id.*, ECF No. 25-2 at 8.

The Promissory Note provides that, as security for the amounts due under the Note, the borrower "grants to lender a continuing first priority purchase money security interest in all of its right, title and interest in, to and under the property described on Exhibit 1 attached hereto and made a part hereof, and all additions, substitutions, replacements, accessories, attachments and accessions thereto and all cash and non-cash proceeds thereof (collectively, the 'Collateral')." *Id.* Gill did not point the Court to a copy of Exhibit 1 to the Promissory Note, so the Court cannot discern from the present record precisely what property is included in the collateral.

The Promissory Note also provides that, in the event of default, the borrower agrees "to pay all costs and expenses

4

incurred by the Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of this Note upon default." *Id.* In addition, the Promissory Note contains an acceleration clause that provides: "In the event that the borrower[s] fail to make any payment due under the terms of this Note, . . . the entire balance of this Note and any Interest accrued thereon shall be immediately due and payable to the holder of this Note." *Id.*

According to Nicol, Thorn was unable to obtain the requisite licenses to operate Advance Alaska. Def.'s Resp. to Pl.'s Mot. for Summ. J. Ex. A, Hartshorn Aff. ¶ 18, ECF No. 28-4 at 2-5. It is undisputed that Premium Service never made any payments to Gill under the Promissory Note.

On February 16, 2011, Nicol entered an Assignment and Assumption Agreement ("Assignment Agreement") with Premium Service, Thorn, and Gill. Pl.'s Statement of Undisputed Material Facts Ex. 4, Assignment Agreement, ECF No. 25-2 at 11-16. The effective date of the Assignment Agreement was October 1, 2010. *Id.*, ECF No. 25-2 at 11. Under the Assignment Agreement, Premium Service transferred to Nicol all its rights under the Purchase Agreement and the Promissory Note, "including without limitation, any and all present and continuing rights to make claim for, collect, receive and receipt for any of the sums of money payable or receivables on behalf of Advance Alaska,

5

LLC." *Id.* ¶ 1.2, ECF No. 25-2 at 11. Nicol assumed and agreed "to fulfill, perform and discharge all the various liabilities, obligations, duties, covenants and agreements under or with respect to or in any way arising out of or relating to assigned Purchase Agreement and Promissory Note." *Id.* ¶ 1.3, ECF No. 25-2 at 11. It is undisputed that Georgia law governs that Assignment Agreement. *Id.* ¶ 3.1, ECF No. 25-2 at 13.

In his deposition, Nicol acknowledged that he signed the Assignment Agreement. Nicol Dep. 72:1-25, ECF No. 25-1 at 26-190. When he signed the Assignment Agreement, Nicol was aware that he was assuming the Promissory Note for "$841,000, roughly." *Id.* at 192:13-23. Nicol acknowledges that he is the owner of Advance Alaska, that Advance Alaska is operating, that the business has value, that he takes a $5,000 draw from Advance Alaska each month, that the business is growing, and that he should have to pay for Advance Alaska. *Id.* at 85:21-86:5; 98:15-25; 129:7-20; 157:22-158:5; 194:4-7. It is undisputed that Nicol has not made any payments under the Promissory Note.

## DISCUSSION

"In an action on a promissory note, a claimant may establish a prima facie right to judgment as a matter of law by producing the promissory note and showing that it was executed." *Gentile v. Bower*, 222 Ga. App. 736, 738, 477 S.E.2d 130, 133 (1996); *accord Smith v. Gordon*, 266 Ga. App. 814, 814, 598

S.E.2d 92, 93 (2004) ("A creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense.") (internal quotation marks omitted). Here, Gill established a prima facie right of repayment because he presented undisputed evidence that Nicol executed the Assignment Agreement, under which Nicol assumed and agreed "to fulfill, perform and discharge all the various liabilities, obligations, duties, covenants and agreements under or with respect to or in any way arising out of or relating to assigned Purchase Agreement and Promissory Note." Assignment Agreement ¶ 1.3, ECF No. 25-2 at 11; *accord* Nicol Dep. 72:1-25, 192:13-23 (acknowledging that Nicol signed the Assignment Agreement and was aware that he was assuming the Promissory Note). It is undisputed that Nicol has not made any payments under the Promissory Note. Therefore, the burden shifts to Nicol to establish an affirmative defense to Gill's claim. *See Gentile*, 222 Ga. App. at 738, 477 S.E.2d at 133.

## I.   Nicol's Affirmative Defenses

Nicol raises two affirmative defenses to Gill's claim. First, Nicol contends that there was a failure of consideration for the underlying Promissory Note. Second, Nicol contends that the underlying Purchase Agreement and Promissory Note are void due to illegality. The Court addresses each affirmative defense in turn.

A.   <u>Failure of Consideration</u>

Failure of consideration is an affirmative defense that the maker of a promissory note can plead in a suit on the promissory note. *E.g., id.* at 739, 477 S.E.2d at 133; *Jaraysi v. Soloway*, 215 Ga. App. 531, 533, 451 S.E.2d 521, 523 (1994). In general, the defense arises when the maker of the promissory note contends that he did not receive the consideration for which the note was given. *See, e.g., Gentile*, 222 Ga. App. at 739, 477 S.E.2d at 134 (maker of promissory note asserted failure of consideration because seller did not deliver warranty deed that maker contended was consideration for note); *Jaraysi*, 215 Ga. App. at 533, 451 S.E.2d at 523 (maker of promissory note asserted failure of consideration under lease agreement when leased building burned down and owner refused to repair it). If the promissory note is vague as to what the consideration was, then an inquiry into the agreed upon consideration is necessary. *Gentile*, 222 Ga. App. at 739, 477 S.E.2d at 134 (finding genuine fact dispute regarding consideration for promissory note).

Here, Nicol contends that the Promissory Note he assumed fails for lack of consideration because the Promissory Note does not specifically define the consideration given for the Promissory Note. Rather, it states that the Promissory Note is "in return for valuable consideration received." Promissory Note, ECF No. 25-2 at 8. In support of his argument, Nicol

points to the affidavit of Kevin Hartshorn, who was consulted regarding Advance Alaska. Hartshorn Aff. ¶ 4. According to Hartshorn, "The professed amount of consideration [in the Promissory Note between Gill and Premium Service] was an arbitrary amount designed to thwart potential creditors [*sic*] interest in suing the company." *Id.* ¶ 16. Hartshorn also asserts: "No consideration was ever exchanged between Premium Service or Raymond Thorn for the Buy Sell Agreement because Raymond Thorn was acting as a straw man for [Loren Gill's brother] John Gill and his desires to get Advance Alaska operating." *Id.* ¶ 17.

Nicol does not, however, dispute that the Purchase Agreement and Promissory Note between Gill and Premium Service were executed on the same day and that they contemplated the sale of Advance Alaska to Premium Service in exchange for $841,870.31. Nothing in Hartshorn's conclusory declaration establishes that there was actually no consideration for the underlying Promissory Note. More importantly, nothing in Hartshorn's conclusory declaration establishes that *Nicol* did not receive consideration in exchange for assuming the Promissory Note. Nicol does not dispute that he assumed the Promissory Note when he executed the Assignment Agreement. Nicol admits that he now owns, controls, and operates Advance Alaska; that the company, which has five offices, has value and

9

makes a profit; that Nicol receives a $5,000 monthly draw from Advance Alaska; and that he should have to pay for the company. From this, the Court concludes that the undisputed evidence establishes that Nicol's failure of consideration argument is meritless.

### B. Illegality of Contract

Turning to Nicol's illegality argument, Nicol argues that the underlying Purchase Agreement and Promissory Note are void due to illegality. Specifically, Nicol contends that Gill and Premium Service entered into the two agreements for the purpose of skirting Alaska's decision to deny Gill's deferred deposit advance licenses that were required for Advance Alaska to operate. Def.'s Resp. to Pl.'s Mot. for Summ. J. 6-7, ECF No. 28. While the administrative law judge noted that Gill was "free to sell Advance Alaska, LLC to someone who is qualified to obtain a license and run the business," Gill was not permitted to maintain control over the company after the sale. Decision on Summ. Adjudication, ECF No. 28-4 at 13. Nicol argues that, despite the Purchase Agreement and Promissory Note between Gill and Premium Service, Gill would continue to operate Advance Alaska even though such an arrangement would violate the administrative law judge's decision. In support of this argument, Nicol cites Hartshorn's declaration. Hartshorn's declaration, however, does not support this argument. In his

declaration, Hartshorn stated that Premium Service was the "straw man" for *John Gill* (Loren's brother) with regard to Advance Alaska. Hartshorn Decl. ¶ 17. There is, however, no evidence to support Nicol's assertions regarding *Loren Gill*. Significantly, Nicol pointed to no evidence that Loren Gill controlled Advance Alaska after Premium Service purchased it. Moreover, there is no evidence that Loren Gill has any control over Advance Alaska now that Nicol is the owner. Accordingly, the Court finds that Nicol has failed to point to any evidence that would create a genuine fact dispute on his illegality affirmative defense.

## II. Amount Due Under Promissory Note

Having concluded that both of Nicol's asserted affirmative defenses fail, the Court must determine the amount due under the Promissory Note.[1] It is undisputed that the outstanding principal amount due under the Promissory Note is $841,871.30. It is also undisputed that the Promissory Note provided for interest at a rate of 9% per annum. Gill seeks interest in the amount of $273,798.02, which represents the total interest owed from the date of the Promissory Note (March 3, 2009) until the date of Gill's summary judgment motion (October 11, 2012). Nicol did not challenge this amount of interest or the manner in

---

[1] Nicol did not respond at all to Gill's arguments regarding the amount due; he simply argued that the Promissory Note was without consideration and was for an illegal purpose.

11

which it was calculated. Finally, Nicol does not dispute that Georgia law governs the Assignment Agreement, that O.C.G.A. § 13-1-11 provides for the recovery of attorney's fees in an action for recovery on a promissory note, or that Gill gave proper notice as required by O.C.G.A. § 13-1-11(a)(3). O.C.G.A. § 13-1-11(a)(2) provides a specific formula for calculating the amount of attorney's fees. Under that formula, Gill seeks $111,591.93 in attorney's fees. Nicol did not challenge this amount of attorney's fees or the manner in which the attorney's fees were calculated. Accordingly, the Court concludes that Nicol is liable to Gill in the following amounts:

| | |
|---|---|
| Principal | $841,871.30 |
| Interest | $273,798.02 |
| <u>Attorney's Fees</u> | <u>$111,591.93</u> |
| Total | $1,227,261.25 |

Gill also contends that he is entitled to a writ of possession in his favor for all collateral designated in the Promissory Note. While the Promissory Note does grant Gill a security interest in certain property, the Promissory Note itself does not list the specific property that constitutes the collateral; rather, the Promissory Note states that such property is listed on Exhibit 1 to the Promissory Note. Promissory Note, ECF No. 25-2 at 8. Given that Gill has not pointed the Court to a copy of Exhibit 1 to the Promissory Note,

the Court cannot discern from the present record precisely what property is included in the collateral.  The Court cannot enter a writ of possession in Gill's favor without some specific evidence of what property comprises the collateral.  For this reason, Gill's summary judgment motion as to the writ of possession is denied.

CONCLUSION

As discussed above, Gill's summary judgment motion (ECF No. 25) is granted as to his claim on the Promissory Note, including his claim for attorney's fees.  Gill is entitled to judgment in his favor and against Nicol in the amount of $1,227,261.25.  Gill's summary judgment motion is denied as to his petition for a writ of possession because the Court cannot discern from the present record precisely what collateral is secured by the Security Agreement.  Nicol's motion to amend his Answer (ECF No. 27) is denied because the proposed amendment would add the two affirmative defenses that the Court has found to be meritless, and thus the proposed amendment is futile.

IT IS SO ORDERED, this 31st day of December, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE